# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| DALE GOVRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV01418 ERW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David D. Noce [ECF No. 27], pursuant to 28 U.S.C. § 636(b).

## I. PROCEDURAL BACKGROUND

Plaintiff Dale Govro brought this action pursuant to 42 U.S.C. § 405(g), requesting judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (Commissioner), finding he is not "disabled" and denying his applications for supplemental security income. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). In his Report and Recommendation, Magistrate Judge David D. Noce concluded there was substantial evidence supporting the Commissioner's findings, and therefore recommended the decision of the Commissioner be affirmed. *See, e.g.*, *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (role of the reviewing court with respect to administrative adjudications by the Commissioner of Social Security is to determine whether the Commissioner's decision was supported by "substantial evidence").

Plaintiff timely filed Objections [ECF No. 28] to the Report and Recommendation.

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *U.S. v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). Thus, the Court conducts a de novo review of the matters raised in Plaintiff's Objections.

## II. DISCUSSION

In his Objections to the Report and Recommendation, Plaintiff argues the Administrative Law Judge (ALJ) failed to properly assess the opinions of two medical professionals. First, Plaintiff claims the ALJ made an improper credibility determination regarding the opinion of Clinical Nurse Specialist (CNS) Roberta Stock, RN, APMHCNS.[1] Second, Plaintiff contends the ALJ failed to consider a mental limitation diagnosed by psychiatrist Gautam Rohatgi, D.O.

The Court's review of the Commissioner's decision is limited to determining whether the decision was supported by "substantial evidence in the record as a whole." *Krogmeier*, 294 F.3d at 1022. In assessing the record as a whole, courts "consider evidence that detracts from the decision, as well as evidence that supports it." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Thus, so long as there is substantial evidence supporting the decision, the reviewing court may not reverse even if there is also substantial evidence that would support a contrary outcome. *Id.*; *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent

---

[1] APMHCNS stands for Adult Psychiatric Mental Health Clinical Nurse Specialist.

conclusions, thus it embodies a zone of choice within which the [Comissioner] may decide to grant or deny benefits without being subject to reversal on appeal.").

In determining whether an applicant is "disabled" for purposes of the Social Security Act, the Commissioner applies a five-step sequential analysis. Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the Residual Functional Capacity (RFC) to perform his Past Relevant Work (PRW). 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). If the Commissioner determines the claimant cannot return to the PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 416.920(a)(4)(v). Plaintiff's Objections primarily concern Step Four of this analysis.

### A. *Clinical Nurse Specialist Robert Stock*

Plaintiff argues the ALJ erred in giving little weight to the opinions of CNS Stock. Specifically, Plaintiff contends (1) the ALJ failed to consider CNS Stock's opinion in the manner prescribed by Social Security Ruling (SSR) 06-3p, (2) the ALJ erroneously discredited CNS Stock's opinions on the basis she failed to mention Plaintiff's noncompliance with medications,

and (3) the ALJ erroneously perceived an inconsistency between CNS Stock's opinions and the Global Assessment of Functioning (GAF)[2] scores she assigned to Plaintiff.

### 1. Social Security Ruling 06-3p

In his decision, the ALJ noted, while CNS Stock is not an "acceptable medical source,"[3] her opinions would still be considered. SSR 06-3p; Tr. 18. Plaintiff argues the ALJ failed to consider CNS Stock's opinions as prescribed by SSR 06-3p, which provides, *inter alia*, the following factors "can be applied" to evidence from "other sources":

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

SSR 06-3p, 2006 WL 2329939, at **5-6.

As an initial matter, the Court notes Plaintiff erroneously assumes SSR 06-3p constitutes a mandatory checklist of considerations. This notion, however, is defeated by the plain language of SSR 06-3p, which expressly states the factors "can be applied" to CNS Stock's opinions. In addition, the final catchall provision allows the ALJ to consider "[a]ny other factors that tend to support or refute the opinion." Plaintiff has cited no authority for his assumption the ALJ must

---

[2] A GAF score "is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006)) (internal quotations omitted).

[3] "Acceptable medical sources" are professionals such as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-3p, 2006 WL 2329939, at *1.

systematically and expressly consider each individual factor in SSR 06-3p. Rather, SSR 06-03p provides a list of guiding principles, which the ALJ "can" apply in his or her discretion, based on the facts of each particular case.

Moreover, the Court finds the ALJ considered CNS Stock's opinions properly within the scope of SSR 06-3p. The ALJ noted CNS Stock's medical source statement, which reported marked limitations in a number of areas, failed to address the fact Plaintiff was noncompliant with his prescribed psychotropic medications. Tr. 18. In fact, CNS Stock's medical source statement cites no objective evidence and provide little to no explanation for its opinions. Tr. 323-25. This concern fits squarely within a factor listed in SSR 06-3p: "How well the source explains the opinion." Similarly, the medical source statement lists Plaintiff's highest GAF in the previous year as 55,[4] and his GAF as 50[5] at the time of the opinion; the ALJ found these scores generally inconsistent with the many marked limitations in CNS Stock's conclusory opinion. Tr. 18. This concern fits within yet another factor listed in SSR 06-3p: "How consistent the opinion is with other evidence." Thus, the Court does not agree with Plaintiff's argument the ALJ failed to consider CNS Stock's opinion as set forth in SSR 06-3p. Substantial evidence supports the ALJ's decision to discredit CNS Stock's opinion.

### 2. Noncompliance with Medications

Next, Plaintiff contends, in discrediting CNS Stock's opinion, the ALJ should not have considered Plaintiff's noncompliance with medication. Specifically, Plaintiff claims, although

---

[4] A GAF of 51 to 60 indicates the individual has moderate symptoms, or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am. Psychiatirc Ass'n 2000) (DSM-IV).
[5] A GAF of 41 to 50 indicates the individual has serious symptoms, or any serious impairment in social, occupational, or school functioning. DSM-IV at 32.

CNS Stock did not discuss Plaintiff's noncompliance in her medical source statement, she was aware of it, as evidenced by her treatment notes.

This is a peculiar argument, because SSR 06-3p – which Plaintiff urges the Court to apply – expressly permits the ALJ to consider how well the source explains the opinion, and how consistent the opinion is with other evidence. Likewise, as the Commissioner notes, "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider *any* inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (emphasis added). To conclude CNS Stock considered Plaintiff's noncompliance simply because she was aware of it would be entirely speculative. Thus, the ALJ was entitled to consider CNS Stock's failure to address Plaintiff's noncompliance with prescribed medications.

### 3. Inconsistency Between CNS Stock's Opinions and Plaintiff's GAF Scores

Finally, Plaintiff argues the ALJ erroneously perceived an inconsistency between CNS Stock's opinions, which indicated marked limitations in many areas, and the comparatively high GAF scores she assigned to Plaintiff: 55 in the previous year, and 50 at the time of the opinion. Tr. 325. Plaintiff states the record shows he never received a GAF as high as 55, from CNS Stock or anyone else.

If Plaintiff is correct, and CNS Stock mistakenly reported a GAF of 55, the Court fails to see how this error could improve the reliability of her findings. Rather, if CNS Stock made such a mistake, her medical source statement would still be inconsistent with the record, and the ALJ could still properly reject her opinion on this basis.

Plaintiff also cites *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) in an attempt to show his previous GAF scores, ranging from 45 to 50, establish a disability. In *Pate-Fires*, the

Eighth Circuit found the ALJ erroneously discredited the opinion of a treating psychiatrist, Dr. David Erby. 564 F.3d at 938. The court explained:

> The total GAF score history indicates Pate-Fires was above 50 only four out of twenty-one times in a six-year period. The ALJ failed to discuss or consider the many GAF scores below 50, including scores as low as 10 and 20. The history of GAF scores at 50 or below, taken as a whole, indicate Pate-Fires has "[s]erious symptoms . . . or any serious impairment in social, occupational or school functioning . . . ." DSM-IV at 32; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting a GAF score of 50 reflects a serious limitation on a claimant's ability to perform basic life tasks; [vocational expert] testified that an individual with a GAF score of 50 could not work)[.]

*Pate-Fires*, 564 F.3d at 944. At first glance, this is persuasive. However, *Pate-Fires* must be read in light of *Jones v. Astrue*, 691 F.3d 963 (8th Cir. 2010), which involved the same treating psychiatrist, Dr. Erby, and held *Pate-Fires* distinguishable on its facts:

> Here, Jones has not presented a "GAF score history" indicating that she was at or below a GAF of 50 on several occasions. Furthermore, unlike in *Pate-Fires*, Dr. Erby's assigning of a GAF of 50 is undercut by his prior comments about "probable dramatic exaggeration of anxiety" on Jones's part due to her disability filing. And, the ALJ explained *why* it was discrediting the findings of Mid South Health System. Also, unlike in *Pate-Fires* where this court found that Dr. Erby's findings did not actually conflict with the consulting psychiatrist's findings, the ALJ here relied heavily on Jones's actual daily activities, such as caring for her father, in reaching its conclusions.

619 F.3d at 974 n.4 (emphasis in original).

The instant case resembles *Jones* more than *Pate-Fires*. The ALJ noted, and the record abundantly supports, CNS Stock perceived Plaintiff as dramatic and manipulative. Tr. 16-18, 248, 250, 395, 397, 399. She reported multiple occasions on which Plaintiff expressly focused on his desire to receive disability payments, and on which Plaintiff asked for notes to avoid work, and, ultimately, to avoid paying child support. Tr. 16, 248, 250, 397, 399. In addition, as in *Jones*, the ALJ here relied on Plaintiff's daily activities, such as raking leaves, cutting grass, doing dishes, cooking, watching television, and playing guitar. Tr. 14. As in *Jones*, and unlike

in *Pate-Fires*, the ALJ here explained why he discredited CNS Stock's opinion. Tr. 18. Moreover, the Eighth Circuit seemed to doubt the potency of *Pate-Fires* altogether when it stated, "[T]he court in *Pate-Fires did not* reference 65 Federal Regulation 50746, 50764-65 (August 21, 2000), in which the Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings." *Jones*, 619 F.3d at 974 n.4 (emphasis in original). In any event, assuming *in arguendo* Plaintiff is correct and the ALJ did erroneously perceive an inconsistency, the outcome would be the same. As the Commissioner, notes, Plaintiff's argument fails to address the medical source statement's lack of explanation for its findings. SSR 06-3p, 2006 WL 2329939, at **5-6. The Eighth Circuit has expressly "recognized that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration.'" *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). CNS Stock's medical source statement is precisely such a form. Accordingly, the Court finds the ALJ's decision to discredit CNS Stock's opinion is supported by substantial evidence.

### B. *Psychiatrist Gautam Rohatgi, D.O.*

Plaintiff's second argument arises out of an ambiguity in the medical source statement of Dr. Rohatgi. That is, Dr. Rohatgi reported Plaintiff had moderate impairments, with two exceptions: (1) in the area of coping with normal work stress, Dr. Rohatgi reported a marked limitation, and (2) in the area of accepting instructions and responding to criticism, Dr. Rohatgi checked both the "moderate" and the "marked" boxes. Tr. 416. The ALJ evidently construed Plaintiff as having moderate limitations in the area of accepting instructions and responding to criticism, as his decision states, "[Dr. Rohatgi] opined that, in his medical opinion, the claimant

had moderate limitation in the ability to perform numerous requirements of performing work related activities except for the ability to cope with normal work stress." Tr. 18-19. Ultimately, the ALJ gave Dr. Rohatgi's opinion "a little weight," finding the marked impairment in Plaintiff's ability to cope with normal work stress was inconsistent with Dr. Rohatgi's treatment notes and the rest of the medical evidence. Tr. 19.

In his instant Objections, Plaintiff contends the Magistrate Judge found Dr. Rohatgi reported a marked limitation in Plaintiff's ability to accept instructions and respond to criticism. Thus, Plaintiff argues the Magistrate Judge misconstrued the ALJ's interpretation of Dr. Rohatgi's opinion. Assuming purely for the sake of argument the Magistrate Judge so erred, such an error would have inured to the benefit of Plaintiff. In any event, because the Court reviews the Magistrate Judge's decision de novo, *Lothridge*, 324 F.3d at 600, the relevant inquiry is whether the ALJ erred, not whether the Magistrate Judge erred.

That said, Plaintiff also contends, when determining Plaintiff's RFC, the ALJ failed to incorporate a moderate limitation in Plaintiff's ability to accept instruction and respond to criticism.[6] This argument is refuted by the record, as the ALJ expressly stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform a range of light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting at least six hours out of eight; and standing/walking at least six hours out of eight) as defined in 20 C.F.R. § 416.967(b) in that he can understand, remember, and carry out at least simple instructions and non-detailed tasks; respond appropriately to supervisors and co-workers; adapt to routine/simple work changes; take appropriate precautions to avoid hazards; should not work in a setting which includes constant/regular contact with the general public; should not perform work which includes more than infrequent handling of customer complaints; and should not work in close proximity to alcohol or controlled substances.

---

[6] Plaintiff makes no objection to the ALJ's reliance on Dr. Rohatgi's "moderate" checked box, as opposed to the "marked" checked box.

Tr. 15. Several of the foregoing provisions address a moderate limitation in the ability to accept instructions and respond to criticism. For example, the ALJ evidently considered Plaintiff's moderately limited ability to respond to criticism when he stated Plaintiff "should not perform work which includes more than infrequent handling of customer complaints," and Plaintiff "should not work in a setting which includes constant/regular contact with the general public." Tr. 15. Similarly, the ALJ considered Plaintiff's moderately limited ability to accept instructions when he stated Plaintiff "can understand, remember, and carry out *at least simple* instructions and *non-detailed* tasks." Tr. 15 (emphasis added). Thus, the ALJ considered Plaintiff's moderate limitations in determining the RFC, and Plaintiff's second argument is refuted by the record.

## III. CONCLUSION

The Court has reviewed the record as a whole and finds substantial evidence supports the ALJ's decision to deny Plaintiff's application for supplemental security income. In assessing Plaintiff's RFC, the ALJ was entitled to discredit the opinion of CNS Stock, to the extent her opinions were conclusory and contained limitations inconsistent with the medical evidence. Additionally, the Court rejects Plaintiff's argument the ALJ failed to consider his moderate limitations in determining his RFC, as this argument is affirmatively refuted by the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner denying Plaintiff's claim for supplemental security income is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint [ECF No. 1] is **DISMISSED, with prejudice**.

Dated this  3rd  Day of September, 2014.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE